STATE OF WEST VIRGINIA

*v.*

ROBERT MOORE

(No. 14103)

Decided December 9, 1980.

*Hostler & Shinaberry and Sterl F. Shinaberry* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Thomas N. Trent,* Assistant Attorney General, for defendant in error.

MCGRAW, JUSTICE

Robert Moore, defendant below, appeals from an order of the Circuit Court of Marion County which denied his motion to set aside a jury verdict of guilty returned against him on a charge of obtaining money by false pretenses. Appellant contends that the indictment did not charge him with a crime and was therefore void as a matter of law, that the evidence adduced at trial was insufficient to support his conviction and that the trial court erred in admitting the testimony of certain witnesses and in refusing to admit evidence offered by the defense. We agree with appellant's assignments of evidentiary error and award him a new trial.

In June 1975, the Marion County grand jury returned an indictment against appellant purporting to charge him with the crime of obtaining money by false pretenses in violation of W. Va. Code § 61-3-24 (1977). The charge arose

from a transaction between appellant and Mr. James W. Taylor and Mrs. Wanda L. Taylor involving the delivery and construction of a modular home. The indictment was based upon the testimony of Mr. Taylor and others. Prior to trial appellant demurred to the indictment, alleging, among other things, that it did not charge a crime for which appellant could be tried. This motion was apparently denied by the circuit court, although no order to that effect appears on the record before us. The case proceded to trial in January of 1977, and resulted in a jury determination of guilty. The court denied appellant's motions to set aside the verdict, to award a new trial and to arrest the judgment. It is from this order that appellant appeals.

Appellant's first contention is that the indictment returned against him did not on its face charge him with the commission of a crime under West Virginia law and was for that reason void as a matter of law. The indictment charged that appellant

> did unlawfully, fraudulently and feloniously represent to James W. Taylor and Wanda L. Taylor that he ... *would deliver and erect* ... a Fuqua modular home ... said erection *to be completed* by October 1, 1974 ... whereas in truth and in fact the said Robert Moore did not intend to deliver and erect ... a Fuqua modular home ... (emphasis added).

Appellant asserts that one may be convicted of the crime of obtaining money by false pretenses only if the false statements alleged to have been made relate to present or past facts. Appellant argues that because the indictment alleges only that he made false promises to perform in the future, it does not charge him with the commission of a crime. We disagree.

W. Va. Code § 61-3-24 (1977) provides "[i]f any person obtain from another, by any false pretense, token or representation, with intent to defraud, money, goods, or other property which may be the subject of larceny ... he shall ... be deemed guilty of larceny ..." The statute is silent as to whether the false representation must relate only to present or past facts. The general rule is that in order to support a conviction of obtaining money or goods

by false pretenses, the false statement or representation alleged to have been made must relate to existing facts or past events. 2 Wharton, *Criminal Law*, 12th Ed. § 1439; 2 Am.Jur.2d *False Pretenses* § 2 (1967). The traditional approach under this rule has been to hold that, in the absence of contrary statutory authority, a false representation as to future events or a false promise to perform in the future does not constitute a "false pretense". *Rogers v. People*, 161 Col. 317, 422 P.2d 377 (1966); *Martin v. State*, 379 So.2d 179 (Fla.App. 1980); *Younkger v. State*, 215 So.2d 318 (Fla.App. 1968); *Rowland v. Com.*, 487 S.W.2d 682 (Ky. 1972); *Reigert v. Com.*, 218 Va. 511, 237 S.E.2d 803 (1977); *Hubbard v. Com.*, 218 Va. 61, 109 S.E.2d 100 (1959); *Driver v. State*, 589 P.2d 391 (Wyo. 1979). The reason most often advanced in support of this position is that to permit prosecutions for false promises to perform in the future would encumber business affairs by subjecting debtors to the threat of criminal penalties, allow disgruntled creditors to retaliate with criminal prosecutions and require the trier of fact to look backwards from the failure to complete the performance to ascertain intent. *Chaplin v. U.S.*, 81 U.S.App.D.C. 80, 157 F.2d 697 (1946).

Other jurisdictions, however, have consistently held that a false promise to perform in the future is a misrepresentation of a present state of mind and thus a misrepresentation of an existing fact sufficient to constitute a false pretense under the criminal statute. *State v. Aurgemma*, 116 R.I. 425, 350 A.2d 46 (1946); *State v. McMahon*, 49 R.I. 107, 140 A. 359 (1928). A growing number of jurisdictions have adopted this approach in rejecting the majority view. *See People v. Ashley*, 42 Cal. 2d 246, 267 P.2d 271 (1954); *State v. West*, 252 N.W.2d 457 (Iowa 1977) *Balsam v. Sheriff*, 93 Nev. 315, 565 P.2d 650 (1977).

Perhaps the most instructive case is *People v. Ashley*, 42 Cal.2d 246, 267 P.2d 271 *cert. denied*, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954), in which the Supreme Court of California, in an attempt to reconcile conflicting precedent in that jurisdiction, discussed at length the reasoning behind the majority rule and rejected it as unpersuasive. In an opinion by Justice Traynor, the California court

discounted the idea that the difficulty of proving intent with respect to false promises would subject debtors to retaliatory criminal charges by vengeful creditors.

> Any danger, through the instigation of criminal proceedings by disgruntled creditors, to those who have blamelessly encountered "commercial defaults" must . . . be predicated upon the idea that trial juries are incapable of weighing the evidence and understanding the instruction that they must be convinced of the defendant's fraudulent intent beyond a reasonable doubt, or that appellate courts will be derelict in discharging their duty to ascertain that there is sufficient evidence to support a conviction.

> The problem of proving intent when the false pretense is a false promise is no more difficult than when the false pretense is a misrepresentation of existing fact, and the intent not to perform a promise is regularly proved in civil actions for deceit. Specific intent is also an essential element of many crimes (footnote omitted). Moreover, in cases of obtaining property by false pretenses, it must be proved that any misrepresentations of fact alleged by the People were made knowingly and with intent to deceive. If such misrepresentations are made innocently or inadvertently, they can no more form the basis for a prosecution for obtaining property by false pretenses than can an innocent breach of contract. 267 P.2d at 282.

The fraudulent intent at the time of the making of the false promise must be shown by "something more than mere proof of nonperformance or actual falsity." *See also People v. Fujita*, 143 Cal. App. 3rd 454, 117 Cal.Rptr. 757 (1974); *People v. Gibson*, 275 Cal. App. 2d 198, 79 Cal.Rptr. 693 (1969). Moreover, the court noted the inherent injustice of excluding false promise as a basis for prosecution.

> If false promises were not false pretenses, the legally sophisticated, without fear of punishment, could perpetuate upon the unwary fradulent schemes. . . . To hold that false promises are not false pretenses would sanction such schemes

without any corresponding benefit to the public order. 267 P.2d at 283.

We find the reasoning of the *Ashley* court and of those jurisdictions falling in line with that decision persuasive. Persons guilty of nothing more than innocent breaches or ordinary defaults are protected from criminal prosecution by the requirement that the State prove beyond a reasonable doubt the fraudulent intent of the defendant at the time the promise was made. "[A] showing of nonperformance of a promise or falsity of a representation will not suffice." 267 P.2d at 283. At the same time, the public is shielded from the prospect of being unable to try and punish those who practice fraud and deceit in an artful manner. We hold, therefore, that when one makes a promise to perform in the future with the intent to cheat, defraud or deceive, such promise constitutes a misrepresentation of an existing fact which is indictable as a "false pretense" under W. Va. Code § 61-3-24 (1977). The indictment returned against appellant alleged sufficient facts on its face to charge the crime of obtaining money by false pretenses and the trial court was correct in refusing to quash the indictment on that ground. We turn now to appellant's assignments of evidentiary error.

Appellant assigns as error the admission by the trial court of the testimony of Mrs. Taylor respecting her physical health and that of her husband. Mrs. Taylor testified that she suffered from several physical ailments, including asthma, emphyzema, and serious ulcers, that she had to use a breathing machine and oxygen in her home, and that her condition had gradually worsened since 1965, when she became disabled. She also testified that her husband had died from a heart attack shortly before the case came to trial and that he had been ill during the period following the transaction. Appellant's objections to this testimony were overruled by the trial court.

We do not think this evidence bears any relation to the crime with which appellant was charged. The prosecution made no attempt to show that appellant's criminal intent or motive was related to the respective ailments suffered by the Taylors or that the fraud of which he was accused

was perpetrated with an eye towards those illnesses. The health of Mrs. Taylor and her husband did not correspond in any way with the guilt or innocence of appellant. Indeed, the only purpose which could be served by the introduction of such evidence would be to create sympathy for Mrs. Taylor in the minds of the jury and to prejudice them against appellant. As such it should have been excluded by the trial court. *See State v. McCausland*, 82 W. Va. 525, 96 S.E. 938 (1918); *Bunting v. Com.*, 208 Va. 309, 157 S.E.2d 204 (1967).

Appellant also assigns as error the admission over objection of the testimony of Mr. Donald Price concerning the purchase of an automobile about one year prior to the transaction between appellant and the Taylors. Appellant asserts that this testimony was totally unrelated to the offense with which appellant was charged and was prejudicial to appellant. The trial court admitted the testimony as evidence tending to show a common scheme or plan on the part of appellant and admonished the jury not to consider the testimony as evidence of the guilt of appellant for the offense charged.

Mr. Price's testimony is somewhat unclear, but it appears that appellant engaged in helping Mr. Price to trade in his Cadillac automobile and to purchase a station wagon from a dealer in Athens, Ohio. Appellant allegedly agreed to drive the Cadillac to the dealer in Ohio and to take care of the title transfer by delivering a blank check issued by Mr. Price to the proper authorities in Charleston. Mr. Price testified that he was later informed that the Cadillac had never been delivered to the Ohio dealer and that the transfer fee had never been paid. On cross-examination Mr. Price testified that he had subsequently discovered the location of the Cadillac and that he did not pay anything more than the purchase price he contracted to pay for the station wagon. No criminal charges were brought against appellant in this matter and Mr. Price testified that he had lost no money as a result of the transaction.

Once again, we restate the well-settled common law rule that in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of

other crimes and offenses at other times, even though they are of the same nature as the one charged, is incompetent and inadmissible for the purpose of showing the commission of the crime charged, unless such other offenses are an element of, or are legally connected with, the offense for which the accused is on trial. Syl. pt. 11, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974); *State v. Hudson*, 128 W. Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265 (1946). One of the exceptions recognized in *Thomas* to the general rule was that evidence of other crimes and offenses is admissible if it tends to establish "a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others". *Thomas, supra* at 455.

> In other words, the law permits proof of a plan or scheme to commit a series of crimes including the one for which the accused is being tried, and, as tending to show the existence of such plan or scheme, it allows testimony of the commission of crimes other than the one charged, but so related in character, time, and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged. 29 Am.Jur. 2d *Evidence* § 326 (1967).

We do not think the evidence offered by the State as to appellant's prior transaction with Mr. Price comes within the exception to the common-law rule set forth above. The transaction which gave rise to the charges against appellant occurred approximately a year after appellant's dealings with Mr. Price. More importantly, even if we assume criminal intent on the part of appellant in his agreement with Mr. Price, the two transactions are not so similar in nature as to lead to the conclusion that appellant had devised a systematic program of criminal behavior. At most, the evidence of other crimes tends to show a propensity on the part of the appellant for committing criminal acts and therefore an increased probability that he committed the act with which he was charged. This is precisely the sort of inference the common-law rule sought to preclude juries from making by excluding evidence of

other crimes. We conclude, therefore, that under the facts of this case the evidence of prior transactions does not come within the common scheme exception to the common-law rule precluding the admission of evidence of other crimes and for that reason should not have been admitted into evidence by the trial court. Having determined that the evidence was inadmissible, our question becomes whether the trial court committed reversible error in admitting it.

We have recently asserted that where the alleged error is nonconstitutional, we will not reverse unless the error is prejudicial to the defendant. *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979). Although in *Atkins*, and in the most recent case of *State v. Haverty*, 165 W. Va. 164, 267 S.E.2d 727 (1980), we found the erroneous admission of evidence of collateral crimes to be harmless error, we think that in this case the facts and the record warrant the conclusion that use of such evidence was prejudicial.

In *Atkins supra*, we set forth a two-step test for determination of whether evidentiary error is harmless.

> First, the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt. If the remaining evidence is found to be insufficient, the error is not harmless. Should it be determined that the remaining evidence is sufficient to support the conviction, an analysis must be made to determine whether the error had any prejudicial effect on the jury. 261 S.E.2d at 61.

Our first inquiry, therefore, is whether the State's evidence, absent the inadmissible testimony as to collateral crimes, is sufficient to support a conviction.

The standard to be used in resolving the problem of the sufficiency of the evidence is our normal standard of appellate review as set out in Syllabus Point 1 of *State v. Starkey*, 161 W. Va. 517, 244 S.E.2d 219 (1978):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the

evidence, where the State's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of the insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

While we recognize that there were conflicts in the testimony given at trial "the jury's verdict of guilt is taken to have resolved factual conflicts in favor of the State." *State v. Haverty, supra* at 735; *State v. Atkins, supra* at 62-63. *See also State v. Starkey, supra.* We proceed therefore with a recitation of the facts taken in the light most favorable to the prosecution.

In June of 1974, appellant entered into an oral agreement with the Taylors wherein he would deliver and erect a modular home for a total cost of $15,500 and construct a garage for an additional cost of $3,275. Although no written agreement was executed, Mrs. Taylor asked appellant for a written contract several times, and was always told by appellant the the papers were on his desk. On June 28, 1974, appellant arranged for the Taylors to visit the modular home factory in Caldwell, Ohio, at which time Mr. and Mrs. Taylor selected a home and paid to appellant by check the amount of $2500 as a deposit or down payment on the home. Appellant told the factory representative that he would send him a certified check for that amount.

Sometime during the summer of 1974, the basement and footers were excavated for the foundation of the home and building materials were delivered to the building site. During this time Mr. Taylor paid for a water tap, and sewage, water and electric lines had been installed.

On August 19, 1974, appellant visited the Taylors at their home and obtained from them two checks in the amount of $2,000 and $10,500, respectively. Both checks, which named appellant as payee, carried the notation "payment on house". Appellant told the Taylors that the home was ready to be delivered and placed on the foundation and that

he needed the money to make full payment on the home and to pay the costs of construction. Appellant stated that he would pay for the home and deliver it within a week.

Two days later, on August 21, 1974, appellant met with Mr. William Reed, a dealer in modular homes, in Caldwell, Ohio. Appellant order a Fuqua home of an approximate value of between $13,000 and $14,000 with the specifications the Taylors had requested on the tour of the factory in June and paid a $1,000 cash deposit thereon. Mr. Reed testified that appellant told him that the party who was buying the home had lost his house in a fire and needed the home immediately. Appellant's agreement with Mr. Reed required him to pay the balance of the purchase price as soon as the home came off the assembly line about ten days later. Mr. Reed testified that when the home was completed around the first of September he tried unsuccessfully to contact appellant. Appellant never came back to Ohio to pick up the home, and made no further payments on the balance due. Approximately one year later, Mr. Reed sold the home to someone else.

After the last payment was made to appellant on August 19, Mr. and Mrs. Taylor were unable to contact him and never saw him working on the site again. After some time they called the factory to discover the whereabouts of their home. The factory had not taken the order, but traced the specifications the Taylors said they had requested, was able to locate the order placed by Mr. Reed and referred the Taylors to him. Mr. Reed told the Taylors that appellant had placed the order for a party whose house had burned down and that the modular home had been completed but that no further payments had been made. The Taylors then approached the prosecuting attorney of Marion County, Mr. Frank Mascara, who, in a letter dated October 24, 1974, informed appellant of the Taylors' complaint and advised him that criminal proceedings might be instituted if the dispute was not resolved. Mr. Mascara testified that appellant telephoned him on October 29, 1974 and told him he would be in touch with the Taylors that week. In January of 1975 appellant was arrested on the present charge.

Appellant maintained at trial that he had continued to work on the construction from October to December of 1974, but was unable to complete it due to weather conditions in the fall of 1974. In support of this he produced witnesses who testified that on December 18, 1974, a cement mixer carrying a load of poured concrete ordered by appellant became stuck in the mud in the subdivision where the Taylor's lot was located and had to be pulled out by a tow truck. A representative of the company which delivered the concrete testified, however, that his company had previously delivered cement to two different sites in the same subdivision without incident for appellant and was uncertain whether the December 18 delivery was to the Taylor's lot or to another one. Appellant also introduced the testimony of two witnesses who lived in the subdivision. One testified that the road leading to the Taylor lot was muddy but "passable" and that her vehicle had become stuck in the mud when she ran into a ditch. The other subdivision resident testified that the Taylor lot was more accessible than his own and that large tractor-trailer trucks had delivered the first load of materials for the construction of his home to his lot in August or September of 1974 without difficulty. He also stated that he had completed the foundation of his home during the rainy season and that he believed the work done on the Taylor lot could have been completed in two or three days.

Appellant also presented bills he had paid for construction materials totaling approximately $900. He stated that he had other bills and labor costs but presented no proof of the amounts paid out. Appellant admitted that he had made no payments to Mr. Reed for the balance of the purchase price of the home after the initial $1,000 deposit, that he had never delivered or erected the modular home and that he had never returned any money to the Taylors. No other evidence was adduced at trial as to what became of the rest of the money paid to appellant by the Taylors. Appellant stated that he has done no other work on the project since January 1975 because he was "told not to", although he did not say by whom, and because he was afraid to move because the case was pending in court.

We cannot say that this evidence is insufficient to support a conviction for the crime of obtaining money by false pretenses. In order to obtain a conviction for the crime of obtaining money by false pretenses under W. Va. Code § 61-3-24, the prosecution must prove the essential elements of the offense, namely: (1) the intent to defraud; (2) actual fraud; (3) the false pretense was used to accomplish the objective; and, (4) the fraud was accomplished by means of the false pretense, i.e., the false pretense must be in some degree the cause, if not the controlling cause, which induced the owner to part with his property. *State v. Pishner*, 72 W. Va. 603, 78 S.E. 752 (1913). It appears that appellant represented to the Taylors on August 19, 1974 that he had already ordered the home when he did not in fact place an order until two days later and that he would deliver it within a week when the home was in fact never delivered. Appellant also told the Taylors that the foundation was ready to set the home but at trial maintained that his work was delayed by inclement weather. The only evidence of this was the testimony indicating that the road was muddy and that a cement truck had to be towed out of the mud in December. There is nothing to indicate that the weather between August 19 and December 18 of 1974 precluded the delivery of the home or completion of the construction. The only indication that appellant worked on the foundation after August 19, 1974, came from bills for concrete which the representative of the company testified was delivered to two different job sites. When this evidence is coupled with appellant's reluctance to reduce the transaction to writing, his misrepresentation to Mr. Reed that the Taylors' house had burned down, his failure to make payments for the balance due on the purchase price of the home, even though he had already obtained full payment for the home and the construction from the Taylors and his failure to deliver the home or reimburse the Taylors, we think it is sufficient to convince an impartial jury of appellant's guilt beyond a reasonable doubt. We do not think that a conviction upon these facts would result in the conclusion "that the evidence was manifestly inadequate and that consequent injustice has

been done". *State v. Starkey, supra.* Having made the determination that the evidence in this case was sufficient to support a conviction, we move on to the second step of the harmless error test which is to analyze the effect of the inadmissible evidence upon the jury.

In *State v. Atkins, supra,* we noted the difficulty inherent in determining whether the erroneous admission of evidence had a prejudicial impact upon the jury and we reviewed the factors that should be considered in making that determination. For example, we noted that "[i]n any inquiry into the prejudicial impact of the error, we will be guided by whether the record reveals that the error was repeated or singled out for special emphasis in the State's argument" and that "overall quality of the State's proof" was important. "If the case contains a number of substantial key factual conflicts or is basically a circumstantial evidence case, or is one that is largely dependent on the testimony of a co-participant for conviction, there is an increased probability that the error will be deemed prejudicial." We also stated that "[a] further consideration is the cumulative effect of the error in the context of the entire trial. We have recognized that there may be error which, standing alone, is not sufficient to require a reversal, but that when cumulated with other marginal error, the combined effect may be sufficient to warrant a reversal." (citation omitted) 261 S.E.2d. at 6263.

Here we find that the State took extensive testimony concerning the automobile transaction between Mr. Price and appellant. Not only did the State present extensive testimony from Mr. Price as to the transaction but the prosecutor repeatedly cross-examined appellant in great detail on the subject. Indeed, almost one half of the prosecution's cross-examination dealt with that transaction. The emphasis placed on the inadmissible evidence here clearly presents a greater probability of prejudice to the defendant in the minds of the jury than it did in *State v. Haverty, supra,* where the prosecution asked only one question of the defendant on cross-examination concerning collateral crimes and made no further reference to it.

In addition, there were numerous key factual conflicts which diminished the force of the State's case. The State's major witness was Mrs. Taylor, who testified extensively as to the representations and actions of appellant to her and her husband with respect to the delivery of the home and the construction of the foundation. The defense attempted to rebut this testimony with the testimony of appellant, which essentially denied Mrs. Taylor's version of what occurred. While the State is entitled to have factual conflicts resolved in its favor in determining the sufficiency of the evidence to support a conviction, the existence of those conflicts must be taken into account when determining whether the jury was prejudicially affected by the introduction of inadmissible evidence.

Finally, when we consider the possible prejudicial effect of the evidence of other crimes in conjunction with the prejudicial effect of Mrs. Taylor's testimony as to her health and that of her husband, we find the overall probability of prejudice too great to ignore. Accordingly we reverse the judgment of the circuit court refusing to set aside the verdict and we award the appellant a new trial.

Appellant has three final assignments of error which we need deal with only briefly. Appellant asserts that the trial court erred in refusing to allow him to testify as to his conversations with Mr. Taylor and to introduce into evidence two letters written by Mr. Taylor with respect to the transaction. The trial court apparently excluded this evidence as hearsay. However, at trial defense counsel failed to vouch the record. Consequently, we are left with no indication as to the contents of appellant's testimony or of the proferred letters. "In order to make exclusion of offered evidence available as a ground of error in an appellate court, the record must be so prepared in the court below as to show what the excluded evidence was. There is no presumption as to what answer a witness would have made to a question propounded." Syl. pt. 4, *State v. Carr*, 65 W. Va. 81, 63 S.E. 766 (1909). *See also State v. Cirullo*, 142 W. Va. 56, 93 S.E.2d 526 (1956); *State v. Taylor*, 130 W. Va. 74, 42 S.E.2d 549 (1947). It not appearing on the record what the

evidence excluded by the trial court would have shown, we are unable to review this assignment of error.

Appellant next contends that the trial court erred in refusing to provide him with a free transcript of the trial upon the filing of a pauper's affidavit. The law is well-settled in this jurisdiction that a person who substantially complies with the requirements of W. Va. Code § 51-7-7, relating to an application for a transcript of testimony, is entitled to a free transcript which he seeks for purposes of prosecuting an appeal from his conviction upon a criminal charge. *State ex rel. Hamrick v. Coiner,* 156 W. Va. 17, 189 S.E.2d 846 (1971); *State ex rel. Kennedy v. Boles,* 150 W. Va. 504, 147 S.E.2d 391 (1966); *State ex rel. Legg v. Boles,* 148 W. Va. 354, 135 S.E.2d 247 (1964). The indigency of the defendant, however, is a question of fact which, if timely controverted, must like other such questions of fact, be determined by the court, and a determination by the court on the issue of indigency rests within its sound discretion. *State ex rel. Wright v. Boles,* 149 W. Va. 371, 141 S.E.2d 76 (1965). *State ex rel. Banach v. Boles,* 147 W. Va. 850, 131 S.E.2d 722 (1963); *State v. Bosworth,* 143 W. Va. 725, 105 S.E.2d 1 (1958). The record below shows that appellant was offered the opportunity to show his indigency and that upon consideration of appellant's motion for a free transcript, the court determined that he was not entitled to one. As appellant does not allege or prove an abuse of discretion on the part of the trial court, we find no error on the part of the trial court in this respect.

Appellant's final contention is that the record does not affirmatively show his presence during all critical stages of his trial. Specifically, appellant asserts that there is no indication in the record that he was present on January 25, 1977, when the jury was impaneled and sworn; on January 27, 1977 when testimony began, and on February 1, 1977, when instructions were argued and the verdict returned. However, the order of the trial court clearly discloses that appellant was present at all of these times, both in person and by counsel. Therefore, we find no merit in this contention.

We would offer one final comment on this case. The State failed to file a brief in this case as required by the Rules of this Court,[1] even after this Court granted the State's motion for an extension of time to do so. This omission on the part of the State is of grave concern to the Court. Indeed, it cannot be overemphasized that the State's appearance should be supported by a statement of law and as much is required of attorneys general in the conscientious execution of these duties under the law. W. Va. Code § 5-3-2. Without the appearance and statement of the law required of the State, justice cannot be done in our adversary system. The courts are constitutionally prohibited from engaging in the practice of law, even on behalf of the State. W. Va. Const. Art. VIII, § 7.

For the foregoing reasons, we reverse the ruling of the Circuit Court of Marion County wherein it refused to set aside the jury verdict of guilty and we award appellant a new trial. This case is remanded for further proceedings in accordance with the principles enunciated herein.

*Reversed and remanded.*

[1] W. Va. R. App. P., Rule 10 (effective Jan. 1, 1980).