363 S.E.2d 725

**STATE of West Virginia**

v.

**Bryson J. ENGLAND, Jr.**

No. 17531.

Supreme Court of Appeals of West Virginia.

Nov. 17, 1987.

Charles G. Brown, Atty. Gen., for plaintiff.

Frank W. Helvey, Public Legal Services, Charleston, W.Va., for defendant.

NEELY, Justice:

On the morning of 28 November 1983, the proprietor of Dyer Brothers Market in Nicholas County discovered that his store had been broken into and ransacked. He estimated the total value of the goods taken at $1,160.00. Mr. Dyer telephoned Trooper Tom Johnson of the West Virginia State Police. Eventually, Charlie Norton, who was living with the defendant's sister, Cindy England, gave the police a statement about the break-in that implicated the defendant, Bryson England. The police also took a statement from the defendant's younger brother, Eric England, his sister, Gerry England, Brenda Rhodes, and Jeff Adkins.

At Bryson England's trial, the five individuals named above testified for the State. Their testimony, in essence, was that during the evening of 27 November 1983, Brenda Rhodes took defendant Bryson England, his brother Eric England and Jeff Adkins to the joint residence of Charlie Norton and Cindy England. There, Bryson England tried to borrow a crow bar for the stated purpose of prying open some vending machines. The request was refused. Miss Rhodes, Mr. Adkins and the two England brothers then proceeded to Dyer Brothers Market and broke into the store through the removal of a screen on a bathroom window. Various items were then passed through the window which were placed in plastic garbage bags in the trunk of Miss Rhodes' car. The State introduced into evidence some items they had recovered from Brenda Rhodes' apartment that Mr. Dyer identified as identical to those missing from his store with his inventory stamp on each item.

Bryson England took the stand in his own behalf. He readily conceded that he had jokingly endorsed a suggestion put forth by Miss Rhodes and his brother Eric that they break into Dyer Brothers Market, but insisted they were just "joking back and forth" as they had been drinking. The defendant also conceded he jokingly asked to borrow the crow bar, but elaborated by saying that Charlie Norton wouldn't lend him any tools because he once had failed to return a set of jumper cables. According to the defendant's side of the story, after leaving Mr. Norton's house, Brenda Rhodes drove the defendant to his mother's home in Fayetteville. It was not until the next afternoon that Bryson England learned that other members of the group had broken into the store after leaving him.

Bryson England's first trial on the breaking and entering indictment ended in a hung jury on 19 September 1984. The second trial began 25 February 1985. In both, the defendant proceeded *pro se*, with a public defender appointed as stand-by counsel. During a pre-trial hearing on 23 January 1985, the circuit court considered Mr. England's request for a transcript of the testimony of the State witnesses taken during his first trial. Mr. England, an indigent, wanted a copy because he alleged he could use that transcript to impeach the witnesses if they made statements inconsistent with their prior testimony.

The court denied Mr. England's transcript request by order on 29 January 1985. The defendant renewed his request for the transcript of prior trial testimony by motion filed 21 February, 1985 and asserted that he had a constitutional right to receive such a transcript. The court denied the motion, stating that Mr. England was present throughout the trial and had taken his own notes. Five more times Mr. England requested a transcript of the prior trial and in each instance the request was denied.

On appeal, Mr. England now asserts that the circuit court committed reversible error by failing to provide him the transcript. We agree and reverse the conviction on that issue alone.

## I

The U.S. Supreme Court in *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), established that both the state and federal governments, although free to withhold completely the right to appellate review in criminal cases, cannot, when such appellate review is made generally available, withhold from indigent persons who have been convicted of a crime the appellate review available to persons able to pay. "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." 351 U.S. at 19, 76 S.Ct. at 591.

The *Griffin* court also held, in considering whether petitioners receive an adequate appellate review, that a state need not purchase a stenographer's transcript in every case where a defendant cannot buy it. This principle was reaffirmed in *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963), where the court held:

> Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judges minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal and a state will not be required to expend its funds unnecessarily in such circumstances.

372 U.S. at 495, 83 S.Ct. at 779.

*Griffin v. Illinois, supra* and its progeny established the principle that the State must, as a matter of equal protection, provide indigents with the basic tools of an adequate defense or appeal, when those tools are available for a price to others. Although the outer limits of this equal protection principal are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.[1]

From *Griffin v. Illinois* and other cases involving an indigent defendant's claim of right to a free transcript, the U.S. Supreme Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

For example, the Supreme Court limited an indigent's right to a free transcript in *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In that case, the defendant's first murder trial had ended in a mistrial and defendant's request, alleging indigency, for a free transcript of the mistrial to prepare for his scheduled retrial was denied. The U.S. Supreme Court affirmed the North Carolina Court of Appeals, holding that a state must provide an indigent defendant with a transcript of proceedings which resulted in a mistrial, *unless the state showed the defendant had available to him an adequate alternative substantially equivalent to the transcript.* In *Britt*, defense counsel conceded that the court reporter "would at any time have read back to counsel his notes of the mistrial, *well in advance of the second trial* if counsel had simply made an informal request." (Emphasis added) 404 U.S. at 229, 92 S.Ct. at 435. Upon the narrow facts of the case, the Supreme Court held that the petitioner had available an informal alternative that ap-

---

1. *See, Williams v. Oklahoma City,* 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); *Roberts v. Lavallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *Long v. District Court of Iowa,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); and, *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

peared to be substantially equivalent to a transcript. 404 U.S. at 230, 92 S.Ct. at 435.

Although the Supreme Court disposed of *Britt v. North Carolina* on a narrow set of facts, it is the language of *Britt v. North Carolina* that dictates a reversal of the present case. The United States Supreme Court in *Britt* rejected any suggestion that "counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial," (404 U.S. at 229, 92 S.Ct. at 434), or that the defendant must show a "particularized need" for the transcript, because "it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." 404 U.S. at 228, 92 S.Ct. at 434. Furthermore, "a defendant who claims the right to a free transcript does not bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." 404 U.S. at 230, 92 S.Ct. at 435.

Relying on the rationale of *Britt v. North Carolina, supra,* and the two prong test set out in *Draper v. Washington, supra,* we find the Nicholas County Circuit Court's reasons for denying Mr. England a transcript of the mistrial insufficient. The trial record is silent as to any reason for the denial of the defendant's transcript request, except the trial court's mistaken belief that the U.S. Supreme Court has held that a defendant must rely on his memory or his notes as to what was the testimony of the state's witnesses. On the other hand, the lack of a transcript denied the *pro se* defendant "the incalculable value of a transcript ... and the unique assistance which it provides counsel in preparing for trial and in impeaching witnesses at trial." *United States v. Jonas,* 540 F.2d 566 (7th Cir.1976) at 572.

We do not have any cases in our jurisdiction on point with the present case. However, the law is well-settled in this jurisdiction that a person who substantially complies with the requirements of *W.Va.Code,* 51–7–7 [1975][2] relating to an application for a transcript of testimony, is entitled to a free transcript for purposes of prosecuting an appeal from his conviction upon a criminal charge. *State v. Moore,* 166 W.Va. 97, 273 S.E.2d 821 (1980); *State ex rel. Hamrick v. Coiner,* 156 W.Va. 17, 189 S.E.2d 846 (1971); *State ex rel. Kennedy v. Boles,* 150 W.Va. 504, 147 S.E.2d 391 (1966); *State ex rel. Legg v. Boles,* 148 W.Va. 354, 135 S.E.2d 257 (1964).

Furthermore, in *U.S. v. Talbert,* 706 F.2d 464 (4th Cir.1983), the U.S. Court of Appeals held that the district court had committed reversible error when it refused to order the government to provide defendants with a free transcript of the first mistrial, because items provided by the government did not constitute adequate alternatives to a copy of the transcript of testimony of the government's witnesses at the mistrial. The *Talbert* court noted that circuit court decisions since *Britt v. North Carolina, supra,* have interpreted narrowly the "adequate alternative" exception.[3]

2. *W.Va.Code,* 51–7–7 [1975] asserts:

   In any case wherein an indigent person has filed a notice of intent to seek an appeal or writ of error as specified in *Code* 58–5–5 [1965] or *Code* 58–5–4 [1965], the court or judge thereof in vacation, upon written request of such convicted person or his counsel, presented within sixty days after the entry of such judgment, shall, by order entered on of record, authorize and direct the court reporter to furnish a transcript of the testimony and proceedings of the trial, or such part or parts thereof as such convicted persons or his counsel shall have indicated in his request to be necessary, to the convicted person, without charge to him, for use in seeking his appeal or writ of error, and the cost of such transcript whether the case be one of misdemeanor or felony, shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges.

3. *United States v. Young,* 472 F.2d 628 (6th Cir. 1972) (limited access to court reporter not enough); *United States v. Jonas,* 540 F.2d 566 (7th Cir.1976) (availability of the judge's notes and reporter's tapes of the first trial was not an adequate substitute); *United States v. Germany,* 613 F.2d 262 (10th Cir.1979) (even though transcript might be of little assistance to the defendants, they still must be supplied a copy of the first trial's transcript.)

We do not find any substitute offered to Mr. England as an "adequate alternative" for the transcript of the first trial. Mr. England repeatedly demonstrated the value of the mistrial transcript for his new trial by requesting the transcript several times for the purpose of impeaching hostile witnesses. Mr. England's conviction was largely based on the testimony of these witnesses and, therefore, their testimony in the prior mistrial was indeed crucial to Mr. England's case. As Mr. England proceeded *pro se*, the notes he took might not be accurate enough to lock a witness into a prior inconsistent statement. Clearly, the circuit court's denial of Mr. England's transcript materially impeded his ability to proceed *pro se* in the second trial and his due process rights were violated under the Fourteenth Amendment to the *Constitution of the United States.*

We reverse Mr. England's conviction and remand for a new trial.[4]

Reversed.

[4] Because this case must be retried, Mr. England's other assignments of error need not be addressed. A new trial judge will hear this case so his assignment of error concerning his denied motion for the judge's recusal is moot and his assignment of error concerning improper conduct by the prosecution and improper jury instructions are quite specific to the context of the last trial.