544 S.E.2d 61

STATE of West Virginia ex
rel. Nathaniel LOWE,
Petitioner

v.

Honorable David W. KNIGHT, Judge of
the Circuit Court of Mercer County, and
William Sadler, Prosecuting Attorney
for Mercer County, Respondents.

No. 27911.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 3, 2000.

Decided Dec. 12, 2000.

Concurring Opinion of Justice
Starcher Jan. 5, 2001.

William O. Huffman, Princeton, for Petitioner.

PER CURIAM.

This case is before this Court upon a petition for a writ of prohibition and/or writ of mandamus filed by the petitioner, Nathaniel Lowe, against the respondents, the Honorable David W. Knight, Judge of the Circuit Court of Mercer County, West Virginia, and William Sadler, the Prosecuting Attorney for Mercer County. The petitioner seeks to prohibit the respondents from prosecuting him on a fifteen-count indictment charging him with sexual abuse and assault of his stepchildren. The petitioner contends that he cannot be prosecuted because of a plea agreement he entered into with the State in a prior abuse and neglect proceeding. We issued a rule to show cause, and now, for the reasons set forth below, deny the writ.[1]

---

1. We are troubled by the State's failure to file a response to the rule to show cause and failure to appear at the oral argument of this matter on October 3, 2000. Pursuant to Rule 10 of the Rules of Appellate Procedure, "[t]he failure to file a brief in accordance with this rule may result in the Supreme Court imposing the following sanctions: refusal to hear the case, denying oral argument to the derelict party, dismissal of the case from the docket, or such other sanctions

## I.

On May 8, 1997, an abuse and neglect proceeding was instituted by the State, naming the petitioner as one of the respondent parents alleged to have abused and/or neglected the petitioner's son and stepchildren. After investigating the allegations, the State reached an agreement with the petitioner whereby the petitioner consented to the termination of his parental rights to his child, and in exchange, the State agreed to limit future criminal prosecution of the petitioner to one count of child abuse resulting in injury as set forth in W.Va.Code, 61–8D–3(a) (1996). The agreement was presented to the circuit court on August 7, 1997, and was incorporated by reference within the parental rights termination order entered on August 27, 1997, in the abuse and neglect proceeding. Thereafter, the petitioner pled guilty to one count of child abuse resulting in injury and was sentenced to an indeterminate term of not less than one nor more than five years imprisonment.

Subsequently, a Mercer County grand jury returned a fifteen-count indictment against the petitioner charging him with sexual abuse in the first degree, sexual abuse by a custodian, child abuse by a custodian, child abuse by a custodian resulting in injury, sexual assault in the first degree, and malicious assault. The indictment which was returned on February 15, 2000, named the petitioner's stepchildren as the victims. On March 15, 2000, the petitioner, by counsel, filed a motion to dismiss the indictment based on the plea agreement limiting potential criminal prosecution entered in the abuse and neglect proceeding. In response, the State asserted that the indictment was proper because at the time the agreement was made, the State was unaware of the facts which constituted the basis for the indictment. Thereafter, the circuit court denied the motion to dismiss.

The petitioner renewed his motion to dismiss on June 2, 2000, and submitted to the circuit court more than 1,600 pages of discovery he received from the State during the abuse and neglect proceeding. The petition-er argued that these documents showed that the State was aware of the facts which constituted the basis for the fifteen-count indictment at the time it entered into the agreement. Again, the circuit court denied the motion to dismiss, and set the matter for trial. The petitioner then filed this petition for a writ of prohibition and/or a writ of mandamus with this Court.

## II.

■■■ We begin by noting that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

---

as the Court may deem appropriate." Moreover, "[w]ithout the appearance and statement of the law required of the State, justice cannot be done in our adversary system." *State v. Moore*, 166 W.Va. 97, 112, 273 S.E.2d 821, 831 (1980).

By contrast, "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

■ In this case, the petitioner contends that the plea agreement he made with the prosecutor during the abuse and neglect proceeding prevents his prosecution on the charges set forth in the indictment. We disagree because we find that the plea agreement between the petitioner and the State is void as a matter of public policy. The agreement limiting potential prosecution of the petitioner provided, in pertinent part,

This Agreement is strictly understood to include any and all parental rights to my said child, and to include my acceptance of the State of West Virginia's offer to limit any potential prosecution arising from any allegations or potential allegations related to the instant abuse and neglect proceeding or any other conduct or activity involving my relationship to Nathaniel G. Lowe [sic—petitioner's son of same name] or any of the other children [petitioner's stepchildren] named in the instant abuse and neglect proceeding.

In exchange for the voluntary relinquishment and consensual termination of my parental rights it is understood and agreed that the State of West Virginia will limit its potential criminal prosecution against me to one count of child abuse resulting in injury under W.Va.Code, 61–8D–3(a).

In *In Matter of Taylor B.*, 201 W.Va. 60, 491 S.E.2d 607 (1997), this Court determined that such plea agreements are invalid. In *Taylor B.*, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") appealed a decision of the Circuit Court of Tucker County concluding that termination of parental rights was not warranted in an abuse and neglect proceeding involving a child that suffered injuries consistent with shaken baby syndrome. In response to the petition for appeal, James B., the appel-

lee, asserted that the abuse and neglect petition filed against him and the child's mother should have been dismissed as part of his *nolo contendre* plea to the misdemeanor offense of presenting false information to attending medical personnel. According to James B., he entered into a plea agreement with the prosecutor whereby he agreed to enter a no contest plea to this misdemeanor charge, and the State promised to terminate the abuse and neglect proceeding. The circuit court refused to accept the plea agreement, but ultimately concluded that the evidence did not support a termination of James B.'s parental rights.

■ In considering James B.'s contention that the abuse and neglect proceeding should have been terminated as part of his plea agreement, this Court again recognized the dual role of prosecutors in civil/criminal abuse and neglect cases and explained that,

"In civil abuse and neglect cases, the legislature has made DHHR the State's representative. In litigations that are conducted under State civil abuse and neglect statutes, DHHR is the client of county prosecutors. The legislature has specifically indicated through Code, 49–6–10 that prosecutors must cooperate with DHHR's efforts to pursue civil abuse and neglect actions. The relationship between DHHR and county prosecutors under the statute is a pure attorney-client relationship. The legislature has not given authority to county prosecutors to litigate civil abuse and neglect actions independent of DHHR. Such authority is granted to prosecutors only under State criminal abuse and neglect statutes. Therefore, all of the legal and ethical principles that govern the attorney-client relationship in general, are applicable to the relationship that exists between DHHR and county prosecutors in civil abuse and neglect proceedings." Syl. pt. 4, *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997).

Syllabus Point 1, *Taylor B.* In this context, this Court concluded that the circuit court's refusal to dismiss the abuse and neglect petition against James B. and the child's mother pursuant to the plea agreement was proper.

In reaching this conclusion, this Court held in Syllabus Point 2 of *Taylor B.*:

A civil child abuse and neglect petition instituted by the West Virginia Department of Health and Human Resources pursuant to Code, 49–6–1 et seq., is not subject to dismissal pursuant to the terms of a plea bargain between a county prosecutor and a criminal defendant in a related child abuse prosecution.

■ Although the plea agreement in this case resulted in the relinquishment of the petitioner's parental rights as opposed to dismissal of the abuse and neglect petition, the agreement is nevertheless void. As we stated in *Taylor B.*, "civil abuse and neglect proceedings focus directly upon the safety and well-being of the child and are not simply 'companion cases' to criminal prosecutions." 201 W.Va. at 66, 491 S.E.2d at 613. While the actions of the prosecutor in this case may not have been adverse to the interests of the DHHR, it is simply against public policy for the prosecutor to threaten criminal prosecution in a civil abuse and neglect case.

■ Moreover, an agreement terminating parental rights is only valid if it is entered into in circumstances free of duress. W.Va. Code, 49–6–7 (1977) provides that, "[a]n agreement of a natural parent in termination of parental rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud." When an agreement to terminate parental rights is made within the context of criminal proceedings and specifically conditions the dismissal of certain criminal charges on the relinquishment of parental rights, it can never be "free of duress" as required by this statute.

Accordingly, for the reasons set forth above, we find that the plea agreement in the underlying case is void as a matter of public policy. Therefore, the petitioner's request for a writ of prohibition and/or a writ of mandamus is denied.

Writ denied.

Justice STARCHER concurs and files a concurring opinion.

STARCHER, Justice, concurring.

(Filed Jan. 5, 2001)

I concur with the result of the majority opinion—because, as the majority holds, prosecutors should not threaten criminal prosecution to get people to give up custody of their children.

However, I am concerned that this particular defendant may have suffered prejudice in his criminal case, as a result of his good-faith reliance upon the custody agreement. Upon remand, the circuit judge should be certain that nothing that the state obtained, by virtue of the invalidated custody agreement, is used against the defendant in any criminal case.