354 S.E.2d 606

**STATE of West Virginia**

v.

**Darwin Leroy BARNES.**

**No. 17057.**

Supreme Court of Appeals of West Virginia.

Feb. 27, 1987.

Jay T. McCamic, McCamic & McCamic, Wheeling, for appellant.

Mary Beth Kershner, Asst. Atty.Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal from a conviction of two counts of obtaining $200.00 or more of money by false pretenses.[1]  The appellant,

---

1. This criminal offense is set forth in *W.Va. Code,* 61–3–24(a) [1981]:

If any person obtain from another, by any false pretense, token or representation, with

Darwin Leroy Barnes, was sentenced for these felonies by the Circuit Court of Wetzel County, West Virginia to two one-to-ten year terms in the penitentiary. We affirm.

## I

The appellant began working for Arbors Management in January, 1984, as a project manager trainee. He was to oversee the management of, *inter alia*, an apartment complex in New Martinsville, West Virginia, called New Martinsville Towers. One of the tenants at the New Martinsville Towers was a Ms. Mary Jacobs, a 53–year-old woman with cerebal palsy. The amount of a tenant's rent at the New Martinsville Towers is determined by federal government officials based upon the tenant's ability to pay. The appellant's duties included examination of the financial situations of the tenants in order to furnish the information to the government officials who periodically determine the amount of rent.

On March 28, 1984, the appellant visited Ms. Jacobs at her apartment and borrowed $2,000.00, without interest. On April 12, 1984, the appellant visited Ms. Jacobs again at her apartment and borrowed $5,800.00, without interest.[2] According to Ms. Jacobs, these loans were made because the appellant promised her that her rent would not be raised and that she would be hired by Arbors Management to replace another employee who worked at the New Martinsville Towers. In addition to relying upon these promises of the appellant, another reason that these loans were made is that

the appellant told Ms. Jacobs that he needed the money to buy Easter clothes and other items for his family.[3]

The appellant failed to keep the promises about the rent (it was raised) and the job (the other employee kept it); indeed, the appellant clearly lacked the authority over such matters.

## II

The appellant argues that, as a matter of law, he did not commit the crime of obtaining money by false pretenses because he purportedly did not obtain both the title to and possession of the loan proceeds[4] and because the State did not show that the lender had suffered a financial loss, in light of an offer of full repayment made in conjunction with an attempted plea agreement. We conclude that both of these arguments are untenable.

Where a person obtains a loan of money by means of a knowingly false representation or pretense relating to a past or existing fact, the person obtaining the loan may be convicted of the crime of obtaining money by false pretenses. *See, e.g., State v. Mills,* 96 Ariz. 377, 379–80, 396 P.2d 5, 7–8 (1964); *People v. Ashley,* 42 Cal.2d 246, 258, 267 P.2d 271, 279, *cert. denied,* 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954); *Smith v. State,* 237 Md. 573, 582–83, 207 A.2d 493, 497–98 (1965); *State v. Cronin,* 299 N.C. 229, 242, 262 S.E.2d 277, 285 (1980). *See generally* annotation, *May Offense of Obtaining Money or Property by False Pretenses or Confidence*

---

intent to defraud, money, goods or other property, which may be the subject of larceny, ... he shall ... be deemed guilty of larceny, and, if the value of the money, goods or other property is two hundred dollars or more, such person shall be guilty of a felony, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years, ...

2. The State at trial contended that the amount of the second loan was $5,000.00, not $5,800.00, and that the appellant had altered the second check to obtain the larger amount. The jury acquitted the appellant of the forgery and uttering charges with respect to this transaction, thus finding that the amount of the second loan was $5,800.00.

3. It was Ms. Jacobs' understanding that the due date of the loans was Easter, 1984 (which fell on April 22, 1984). It was the appellant's understanding that the due date of the loans was Easter, 1985.

4. The crime of obtaining property by false pretenses requires the owner of the property to intend to part with the title to as well as the possession of the property, whereas the crime of larceny requires the owner of the property to intend to part with the mere possession of the property. *See State v. Martin,* 103 W.Va. 446, 448, 137 S.E. 885, 886 (1927); syl. pts. 1–2, *State v. Edwards,* 51 W.Va. 220, 41 S.E. 429 (1902).

*Game Be Predicated on Obtaining Loan or Renewal Thereof,* 24 A.L.R. 397 (1923), *supplemented in* 52 A.L.R. 1167 (1928); annotation, *Modern Status of Rule that Crime of False Pretenses Cannot Be Predicated upon Present Intention Not to Comply with Promise or Statement as to Future Act,* 19 A.L.R. 4th 959, § 9 (promise or statement concerning purpose of loan) (1983); 32 Am.Jur.2d *False Pretenses* § 44 (1982). The lender intends to pass both title to and possession of the loan proceeds. *People v. Ashley, supra.* An intent to repay the loan is no defense to a prosecution for obtaining money by false pretenses. *State v. Mills, supra.*

■ The crime of obtaining money or property by false pretenses is complete when the fraud intended is consummated by obtaining title to and possession of the property by means of a knowingly false representation or pretense. The crime is not purged by ultimate restoration or payment to the victim. It is sufficient if the fraud of the accused has put the victim in such a position that he or she may eventually suffer loss. *Quidley v. Commonwealth,* 221 Va. 963, 966, 275 S.E.2d 622, 625 (1981).

■ The appellant in the case now before this Court relies upon *McGee v. State,* 97 Ga. 199, 199–200, 22 S.E. 589, 589 (1895), which expresses the minority view that an essential element of the crime of obtaining money or property by false pretenses is a pecuniary loss by the victim. Like the court in *State v. Mills,* 96 Ariz. 377, 381, 396 P.2d 5, 8 (1964), *supra,* this Court believes the better view is aptly expressed by Judge Learned Hand in *United States v. Rowe,* 56 F.2d 747, 749 (2d Cir.), *cert. denied,* 286 U.S. 554, 52 S.Ct. 579, 76 L.Ed. 1289 (1932):

> Civilly of course the action [for deceit] would fail without proof of damage, but that [principle] has no application to criminal liability. A man [or woman] is none the less cheated out of his [or her] property, when he [or she] is induced to part with it by fraud, because he [or she] gets a quid pro quo of equal value.... [The victim] has lost his [or her] chance

to bargain with the facts before him [or her]. That is the evil against which the [criminal] statute is directed.

### III

The appellant also argues that the State's case was fatally damaged when Ms. Jacobs testified that the money was loaned to the appellant so that he could buy Easter clothes and other items for his family. The appellant contends that this evidence indicates that the loan was not fraudulently induced by any promises to Ms. Jacobs and that he was, therefore, entitled to a judgment of acquittal.

While Ms. Jacobs did testify that the money was loaned to the appellant so that he could buy Easter clothes and other items for his family, she also testified that, in making the loan, she relied upon the appellant's promises that he would see that her rent was not raised and that she would get the job at the New Martinsville Towers. "Of course[,] the question as to whether or not the [accused] actually made these representations, and even if he [or she] did make them, whether or not they were relied upon by the [victim], were matters of fact for the jury, ..." *Sudnick v. Kohn,* 81 W.Va. 492, 494–95, 94 S.E. 962, 963 (1918).

■ The essential elements of the crime of obtaining money or property by false pretenses, *W.Va.Code,* 61–3–24(a), as amended, are: (1) the intent to defraud; (2) actual fraud; (3) the false pretense was used to accomplish the objective; and (4) the fraud was accomplished by means of the false pretense, that is, the false pretense must be in some degree the cause, if not the controlling cause, which induced the owner to part with his or her property. *State v. Moore,* 166 W.Va. 97, 108, 273 S.E.2d 821, 829 (1980). In this case it is important to recognize that the false pretense need not be the sole inducing cause of the owner's parting with the property. *See People v. Ashley,* 42 Cal.2d 246, 259, 267 P.2d 271, 279, *cert. denied,* 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954).

■ The types of promises made by the appellant in this case may constitute

indictable false pretenses: "When one makes a promise to perform in the future with the intent to cheat, defraud or deceive, such promise constitutes a misrepresentation of an existing fact which is indictable as a 'false pretense' under W.Va.Code § 61–3–24 (1977)." Syl., *State v. Moore*, 166 W.Va. 97, 273 S.E.2d 821 (1980).[5]

For the reasons stated, we perceive no reversible error and, accordingly, the judgment of conviction is affirmed.

Affirmed.

---

**5.** In both *State v. Moore*, 166 W.Va. 97, 97–102, 273 S.E.2d 821, 824–26 (1980), and *Kennedy v. State*, 176 W.Va. 284, 287–88, 342 S.E.2d 251, 255–56 (1986), we noted our awareness of the argument, also made here by the appellant, that permitting prosecutions for false promises to perform in the future could conceivably lead to an abuse of the criminal process by creditors and could lead to confusion of a mere breach of contract with criminal conduct. This Court found sufficient protections in the evidentiary burden imposed upon the State to show, beyond a reasonable doubt, fraudulent intent and the other elements of the crime, as well as to show, beyond a reasonable doubt, more than mere nonperformance of a promise or mere falsity of a representation.

All of the appellant's other assignments of error are without merit. Upon a thorough review of the entire record it is evident that the conduct of the trial by the trial court and the conduct of the prosecutor assigned as error do not constitute grounds for reversal. Any error was, variously, harmless nonconstitutional error, invited error or was not preserved for review by this Court due to absence of plain error and lack of timely and proper objections or motions.