Norfolk

THOMAS ROLAND WATSON

v.

COMMONWEALTH OF VIRGINIA

No. 1318-85

Decided July 21, 1987

COUNSEL

Richard N. Levin (Levin, Hawks and Kozak, on brief), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.** — This is an appeal of a conviction of obtaining money by false pretenses in which the defendant contends that the evidence was insufficient to convict him. We disagree and affirm the conviction.

Defendant was hired to live with and care for the victim, an 87-year old man. He was paid a salary of $350 a month and received his room and board. In return, he was responsible for "taking care of the house and everything, the shopping; well, just looking after things." In addition, on occasions when he identified the need for household repairs, decorations or other articles, he was authorized to make the necessary repairs or purchases. Six months after his employment, the victim's daughter discharged the defendant when she found that he had spent too much money on groceries and telephone bills.

After the defendant's discharge, the daughter discovered six checks which the victim, who was deceased at the time of trial, had written payable to the defendant. These checks were entirely in the victim's handwriting and were for various amounts, totalling $6,596. Each check had a notation in the lower left-hand corner which read "household," "house repairs," "house repair," "home improvement," or "panel and lumber expense."

An additional check in the amount of $950 and in the victim's handwriting was dated and negotiated after the defendant was discharged. It was payable to Faith Peterson, a friend of the defendant's. The notation on this check read "services rendered," but Peterson testified that she performed no services for the victim. She said that the defendant asked her if he could have the check made payable to her because he had lost his driver's license and could not cash the check. At the defendant's request, Peterson allowed him to deposit the check into her account and wrote him a

check for the same amount. The defendant later negotiated the check using his driver's license for identification. The defendant explained to an investigating detective that he found his driver's license later that afternoon.

Although the daughter shared a joint account with the victim, the account contained the victim's funds and he wrote the checks on the account. She said that the victim was "very meticulous about his money" and "always wrote on the check what everything was for." She said that he was not "mentally incapacitated," but had diabetes and poor vision.

Evidence of household repairs and improvements was introduced at trial. A list of a number of checks written by the victim during this period of time for various house related purchases was admitted along with an itemized statement of all improvements to the house observed by the daughter which had apparently been made during the defendant's employment. Although no evidence of the value of these improvements was introduced, the Commonwealth contends that the jury could have concluded that the value of the improvements was less than the value of the monies paid for the improvements and, therefore, the defendant must have induced the victim through the use of false pretenses to write the six checks payable to the defendant.

■ In order to establish larceny by false pretenses, the Commonwealth must prove that false pretenses were employed to perpetrate a fraud. *Riegert v. Commonwealth*, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977); *Hagy v. Commonwealth*, 168 Va. 663, 666, 190 S.E. 144, 145 (1937). The false pretense must be a false representation of an existing fact or past event. *Riegert*, 218 Va. at 518, 237 S.E.2d at 807-08; *Hubbard v. Commonwealth*, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959).

■ Evidence of the difference in value, if any, between services and goods provided and the amount paid for them, is not evidence of a false representation of a past or existing fact. Such evidence does not establish that any representation was made to induce the purchase. Nor does such evidence prove that any representation made was false or was of a past or present fact, as opposed to mere promises or statements of intention relating to future events. Only speculation leads to a conclusion that the difference in values resulted from a false pretense.

However, the $950 check to Faith Peterson presents a different basis for determining the defendant's guilt. If the jury believed the defendant's explanation, that the check was made payable to Faith Peterson so that it could be cashed without his lost operator's license, the jury would have had to find him not guilty. His explanation, if believed, obviated any false pretenses in obtaining the check.

If the jury did not believe the defendant's explanation, the defendant's possession of the check could only be explained by his having obtained it through the use of false pretenses. The check, written by the victim, was payable to Faith Peterson for "services rendered," but was delivered to her by the defendant with the explanation about his operator's permit. The defendant lived with and cared for the victim and arranged for household repairs and other services for the victim. If the defendant's explanation about his operator's license was false, he could have only acquired the check by telling the victim that Faith Peterson had performed certain of these services for the victim. Peterson testified that she performed no services for the victim; therefore, any representation that she had was false.

There were only two explanations for the check. One the defendant made to Peterson and to the investigating detective. The other explanation necessarily rests on a false representation by the defendant to the victim. Whether the defendant's explanation was true was a question of fact to be determined by the jury. Upon their determination that his explanation was not true, a guilty verdict could only follow. Therefore, the evidence was sufficient to support the jury's verdict.

For these reasons the judgment of conviction is affirmed.

*Affirmed.*

Baker, J., and Coleman, J., concurred.