COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Lemons and
           Senior Judge Duff
Argued at Alexandria, Virginia


GARY E. JEWEL
                                            OPINION BY
v.    Record No. 2899-97-4         JUDGE CHARLES H. DUFF
                                         AUGUST 3, 1999
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF WARREN COUNTY
                       Dennis L. Hupp, Judge

            Thomas D. Logie (Elwood Sanders, Jr.; Office
            of the Public Defender; Public Defender
            Commission, on briefs), for appellant.

            Eugene Murphy, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Gary E. Jewel, appellant, appeals his conviction for two

counts of grand larceny by false pretenses.  He argues the trial

court erred by allowing the Commonwealth to impeach him by using

a prior conviction order, which indicated that he entered guilty

pleas to two charges but did not contain the trial court's

findings of guilt or its imposition of a sentence.  He also

contends the trial court erred in refusing to give his proffered

jury instruction concerning the elements of larceny by false

pretenses.  Finding no error, we affirm the convictions.

## FACTS

The evidence proved that appellant was the owner and president of a business called Quick Strike, Inc. ("Quick Strike"). Appellant approached Robert E. Clayton, a certified public accountant, for a loan concerning this business. Appellant represented to Clayton that he had several contracts for work but needed money to rent equipment to perform the work for these contracts. Appellant stated that he did not have time to obtain financing through traditional loans and asked Clayton if he knew anyone who could provide him a loan for one to two months at an interest rate of 10% per month.

Appellant showed Clayton several "signed, executed contracts" for which the customers were allegedly waiting for appellant to begin work. Clayton reviewed the price breakdown on the contracts and determined that appellant had calculated a sufficient profit margin in the contracts in order to pay the high interest rate on the loan.

One of the contracts appellant showed Clayton was signed by a "Peter Rebull" of Rebull and Associates. Appellant also gave Clayton a letter from Rebull which purported to represent Rebull's authorization to use Clayton as manager of the accounts receivables and accounts payable for the contract. Clayton then loaned appellant $8,000.

Appellant later requested another loan from Clayton and provided Clayton with a copy of a contract signed by a "Robert Barnhardt," with Associated Environmental Services, Inc., for work to be performed for their client, Martin Marietta Corporation ("Martin Marietta"). Appellant asked Clayton for $20,000 to use to rent equipment in order to start the contract. Appellant also provided Clayton with a letter purporting to represent Martin Marietta's authorization to use Clayton as manager of the accounts receivable and the accounts payable for the contract.

Appellant showed Clayton an invoice to Peter Rebull in the amount of $31,834 for work performed on that contract and asked Clayton to mail the invoice to Rebull. Clayton called the telephone number provided by appellant for Peter Rebull and spoke with someone claiming to be Rebull. This person assured Clayton that the $31,834 would be paid within sixty days.

Clayton then made a second loan to appellant for $20,000. Clayton deposited a $20,000 cashier's check in Quick Strike's bank account. The cashier's check contained the following notation, "Re: Robert E. Clayton Martin Marietta Loan."

Clayton testified that he "absolutely" would not have made the two loans to appellant if appellant had not provided him with copies of the two executed contracts.

Clayton stated that he became concerned when payment on the first loan became overdue. Appellant told Clayton that he would have Rebull call him, and Clayton received a recorded telephone message from someone claiming to be Rebull. The man said he would pay Clayton when appellant completed certain tasks at the job site. Clayton saved the recorded message and played the tape recording for appellant's answering service employee. The answering service employee testified that the voice on the tape was the voice of appellant's son. She also identified the telephone number that appellant gave Clayton for Peter Rebull as appellant's cellular telephone number. She stated that, on several occasions, she had called appellant's cellular phone number, and someone answered indicating that he was Peter Rebull. The Commonwealth presented evidence that the address appellant gave Clayton for Peter Rebull was a fraudulent address.

Clayton eventually confronted appellant about his inability to reach Rebull at the telephone number and address provided by appellant. Appellant told Clayton that the information he gave Clayton was a "clerical error" and "an oversight." Appellant said he was not sure why he gave Clayton that telephone number and address. Clayton testified that, eventually, appellant admitted to him that he "lied" about the loans.

Robert Barnhardt, of Associated Environmental Services, testified that he never entered into a contract with Quick Strike. Barnhardt stated that he sent a request to appellant's company for a quotation for a job but appellant's company was not chosen to perform the work. Barnhardt testified that the request would have contained his signature.

At the trial, appellant admitted that he provided the two "contracts" to Clayton but testified that the Rebull contract was meant to be a "sample" or "example of a medium sized contract" for his company. He also testified that the Martin Marietta contract was a "hypothetical" contract intended to show "the size of the job that Quick Strike . . . could handle." Appellant admitted that he placed Barnhardt's signature on the Martin Marietta contract because "[i]t was a bogus sample contract." Clayton testified that appellant did not give him any documents that appellant described as a "sample" contract.

ANALYSIS

I.  Impeachment Evidence

Prior to the start of the trial, appellant filed a motion in limine requesting that the trial court refuse to allow into evidence appellant's prior felony convictions from Loudoun County. Although appellant pled guilty to the charges, he argues that the trial court erred in allowing the Commonwealth to use these convictions as impeachment evidence because the

order from the Loudoun County Circuit Court does not indicate that the trial court found appellant guilty of the charges and because the order does not contain sentencing information. Appellant further asserts that the guilty pleas were not supported by the evidence.

The May 21, 1997 Loudoun County Circuit Court order indicates that appellant entered guilty pleas to two felonies, and the trial court accepted the pleas.  The order indicates that appellant entered into a plea agreement in the case, and the Commonwealth presented "stipulated evidence" regarding the charges.  The order further states that appellant presented no evidence on his behalf.  The trial court accepted appellant's guilty pleas as to two counts, ordered the preparation of a presentence report, and set a sentencing date.

In Fields v. Commonwealth, 5 Va. App. 229, 234, 361 S.E.2d 359, 362 (1987), a witness had entered voluntary guilty pleas to two felonies, which were accepted by the trial court.  However, at the time the witness testified in another trial, the court had not imposed its sentences for the prior convictions.  Id. at 233, 361 S.E.2d at 361.  Relying on the rationale in Lincoln v. Commonwealth, 217 Va. 370, 228 S.E.2d 688 (1976), we held that "for purposes of impeachment, [the witness] had the status of a convicted felon when he testified . . . ."  Fields, 5 Va. App. at 234, 361 S.E.2d at 362.

In Lincoln, the issue was whether the trial court erred in refusing to give a jury instruction regarding the credibility of convicted felons. Two accomplices in a robbery testified against the defendant. In describing the facts of the case, the Court stated that the witnesses had "previously entered guilty pleas and stood convicted, but not sentenced, for participating in the robbery." Lincoln, 217 Va. at 371, 228 S.E.2d at 689 (emphasis added). Although the Court found that the instruction was supported by the evidence, it was not reversible error to refuse it because the point was covered by other instructions. See id. at 375, 228 S.E.2d at 692.

In Dowell v. Commonwealth, 12 Va. App. 1145, 1147-48, 408 S.E.2d 263, 265 (1991), aff'd on reh'g en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992), we emphasized that the circumstances in Fields, where the witness had entered a voluntary guilty plea, were distinguishable from a case where a witness had pled not guilty, had been convicted by a jury but had not yet been sentenced. We stated that, because a judge could set aside a jury verdict, "[t]he availability of such a remedy detracts from the finality of the jury's verdict and consequently the reliability of such a verdict for impeachment purposes." Id. at 1149, 408 S.E.2d at 265. Thus, the holding in Dowell did not limit the Fields decision.

Appellant contends the May 21, 1997 order is "quite clear" that, when the guilty pleas were accepted, the trial court made "no finding of guilt."  However, the order indicates that the court accepted the pleas.  "'[A] voluntary and intelligent plea of guilty by an accused is, in reality, a self-supplied conviction authorizing imposition of the punishment fixed by law.'"  Id. at 1148, 408 S.E.2d at 265 (citation omitted) (emphasis added).  "'A plea of guilty that is voluntarily and intelligently made by an accused is a conviction and nothing is left but the imposition of the prescribed punishment.'"  Id. (citation omitted).  Therefore, appellant's argument is without merit.

Appellant also cites several cases that do not address the instant issue but address the use of prior convictions for other purposes.  See McBride v. Commonwealth, 24 Va. App. 30, 480 S.E.2d 126 (1997) (involving what constitutes a prior conviction for a second offense DUI conviction); Bellinger v. Commonwealth, 23 Va. App. 471, 477 S.E.2d 779 (1996) (involving what constitutes "records of conviction" for admission of prior criminal convictions into evidence at the sentencing phase).  These cases did not involve the impeachment of a defendant by a showing of prior convictions, and the rules regarding impeachment did not apply in these cases.  See 1 Charles E. Friend, The Law of Evidence in Virginia 109 (1993) ("It is

extremely important that the rules regarding the impeachment of an accused by a showing of prior convictions be kept distinct from other rules which permit the showing of prior criminal activity by an accused."). Therefore, the cases are inapposite.

Appellant also contends Code § 19.2-307 requires that the order of conviction must contain a finding of guilt by the trial judge. The order in appellant's case does not include some of the elements listed in Code § 19.2-307, which is entitled "Contents of judgment order." The order in appellant's case does not contain a statement as to whether the case was tried by jury, whether the Commonwealth and the court concurred in the waiver of a jury trial, or the sentence. The order does not contain a "verdict or findings and the adjudication and sentence." Code § 19.2-307. However, Code § 19.2-307 addresses sentencing orders and is located in that part of the Code that discusses sentence, judgment, and execution of sentence. The order in appellant's case specifically ordered the preparation of a presentence report and scheduled a future date for sentencing. Thus, it was not the final sentencing order for the matter. However, the document is a formal court order, signed by a judge, setting forth appellant's guilty pleas, stating that the Commonwealth and appellant entered into a plea agreement concerning the charges, and stating the acceptance of the guilty pleas by the judge. Furthermore, the Commonwealth did not seek

to use the document in the sentencing phase of appellant's trial in accordance with Code § 19.2-295.1.

Moreover, Code § 19.2-283, entitled, "How accused may be convicted of felony," states, in pertinent part, that "[n]o person shall be convicted of a felony, unless . . . by his plea . . . accepted and recorded by the court . . . ." The order clearly states that the trial court accepted appellant's guilty pleas. Therefore, we find that, "for purposes of impeachment, [appellant] had the status of a convicted felon when he testified." Fields, 5 Va. App. at 234, 361 S.E.2d at 362.

Appellant also contends that constitutional principles dictate a different result where the person to be impeached is the defendant as opposed to a mere witness. However, none of the United States Supreme Court cases cited by appellant addresses the issue of the use of a prior conviction to impeach either a witness or a defendant. Furthermore, none of the cases cited by appellant addresses whether different rules apply for the impeachment of a defendant as opposed to a witness.

Code § 19.2-269 provides: "A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit." The Virginia Supreme Court has interpreted the former version of the statute as follows:

- 10 -

The statute permits the examination of a defendant as to any prior felony convictions, should he become a witness in his own behalf. The sole purpose of such inquiry is to attack the defendant's credibility as a witness. His answer is not to be considered as evidence of his guilt or innocence of the crime charged, and the jury is usually so instructed.

We construe the statute to mean that the fact of conviction of a felony may be shown by the Commonwealth, but the name of the felony, other than perjury, and the details thereof may not be shown. We are not unaware that some prejudice rises against a defendant when it is disclosed that he has been convicted of a felony, but its probative value as to his credit outweighs the prejudicial effect.

Harmon v. Commonwealth, 212 Va. 442, 446, 185 S.E.2d 48, 51 (1971). Thus, the Court interpreted the statute to allow the impeachment of defendants and other witnesses by this method.

The trial transcript indicates that the Commonwealth's Attorney asked appellant, "[I]t is true, is it not, that you have two prior felonies at this point?" Appellant replied, "Yes, Sir, I do." Nothing further was said about the convictions. Thus, the Commonwealth's use of the evidence complied with Harmon. Accordingly, the trial court did not err in allowing the Commonwealth to impeach appellant by using the evidence of his prior convictions.

## II. Jury Instruction

Appellant argues that the trial court erred in granting Jury Instruction No. 7 concerning the elements of larceny by false

- 11 -

pretenses. He also argues that the trial court erred in refusing to give his proffered Jury Instruction A regarding the elements of the offense.

Appellant first argues that the granted instruction failed to inform the jury that one of the elements of the offense was that appellant intended to permanently deprive the owner of his property at the time the money was advanced. Thus, appellant argues, the granted instruction misled the jury to believe that appellant's initial receipt of the money satisfied the requirement of proof that an actual fraud was committed. Appellant contends that the requirement of actual fraud includes the larceny element of intent to permanently deprive the owner of his property.

The elements of larceny by false pretenses are:

> "'(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property.'"

Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807 (1977) (citation omitted). Thus, there is no requirement that the owner must be permanently deprived of the property.

The granted instruction stated, in pertinent part:

> The defendant is charged with the crime of larceny by obtaining property by false pretenses. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

- 12 -

1. That the defendant knowingly and intentionally made a false representation of a past event or an existing fact; and

2. That when the representation was made, the defendant had an intent to defraud the owner or possessor by causing him to part with the possession of and title to his property; and

3. That because of the false representation, the owner or possessor parted with the possession of and title to his property; and

4. That the property taken was worth $200.00 or more.

Nothing in the wording of the granted instruction indicates that "the receipt of the funds is itself the fraud," regardless of appellant's intent. Moreover,

[t]he gravamen of the offense, . . . is the obtainment of ownership of property, by false representations or pretenses. But there is no requirement that the intended victim suffer actual pecuniary loss. Ultimate financial gain or loss to the victim is immaterial.

The crime is complete when the fraud intended is consummated by obtaining the property sought by means of the false representations, and the offense is not purged by ultimate restoration or payment to the victim. It is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss.

Quidley v. Commonwealth, 221 Va. 963, 966, 275 S.E.2d 622, 624-25 (1981). Therefore, "the crimes [were] complete" when Clayton surrendered money to appellant, in reliance upon appellant's false representations that he had contracts with the two companies. Thus, the granted instruction properly

- 13 -

instructed the jury on these elements of the offense. Accordingly, appellant's arguments are without merit.

Appellant also contends the granted instruction "misl[ed] the jury into believing that evidence of nonpayment is sufficient evidence of intent to defraud . . . ."  He further argues that the granted instruction "eliminate[d] the need of the Commonwealth to prove . . . that [appellant] must have had the intent to defraud at the time he received the loans" and permitted the jury to find intent to defraud from "the mere fact of nonpayment."

However, the jury was clearly instructed in the second element of the granted instruction that the Commonwealth had to prove that appellant had an intent to defraud when the representations were made.  Nothing in the language of the instruction directed the jury to find the intent to defraud from appellant's failure to recompense Clayton for the "loans." Indeed, the granted instruction made no reference to repayment, nonpayment, or the intent to repay Clayton.

Furthermore, the granted instruction complied with the holding in Lewis v. Commonwealth, 28 Va. App. 164, 172, 503 S.E.2d 222, 226 (1998).  In Lewis, we stated: "the jury should have been instructed that the intent to defraud must have existed at the time the false representations were made . . . ."

- 14 -

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). Jury Instruction No. 7 clearly stated the elements of larceny by false pretenses and covered issues raised by the evidence. Moreover, the instruction was not misleading concerning the intent to defraud element. Therefore, the trial court did not err in granting Jury Instruction No. 7.

For these reasons, we affirm the convictions.

Affirmed.