COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:  Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia


MICHAEL PAUL REID

OPINION BY
v.     Record No. 0511-15-1        JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 2, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Joshua A. Goff (Law Office of Joshua A. Goff, PLC, on brief), for
appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


After a bench trial, the Circuit Court for the City of Newport News ("trial court")

convicted appellant Michael Paul Reid of two counts of obtaining money by false pretenses.  On

appeal, Reid argues that the trial court erred in denying his motion to strike the Commonwealth's

evidence regarding the two counts of obtaining money by false pretenses because:  (1) a loan of

currency was legally insufficient to transfer both title and possession of the property in question

to Reid, and (2) the evidence failed to establish that the pretenses Reid used to obtain the

currency were false.  Finding no error, we affirm.

## I. BACKGROUND

At trial, two witnesses (Christina Etienne and Alexander Williams, or "the victims")

testified to similar interactions with Reid, although their interactions occurred months apart.  On

both occasions, while driving near the Newport News Shipyard, Reid flagged the victim down.

He told them that he worked at the Shipyard and that his car had been towed for parking

illegally. He asked each for a ride to get his car from the towing company, and asked them to loan him money to pay the fee to recover his car. He also promised to repay them and to provide additional money beyond the amount of the loan, from cash he claimed was in his vehicle, for their time and help.

Both victims testified that Reid persuaded them to go to an ATM and withdraw more money than they were comfortable with and that even after doing so, Reid continued to ask them for additional money. All told, in what was ostensibly a loan, Etienne gave Reid a total of $280 and Williams gave him $300. Under the guise of obtaining more money in order to pay to retrieve his car, Reid had each victim drive him to various places. Reid would have them park, then he would go around the corner and disappear into a residence while the victim waited in the car. Both interactions went on for hours. Neither resulted in Reid recovering the allegedly towed car, going to a towing company, or repaying the victim.

## II. ANALYSIS

### A. Transfer of Title or Ownership to Currency

"What the elements of the offense are is a question of law that we review de novo. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24, 738 S.E.2d 847, 868 (2013).

In Virginia, "by statute, the obtaining of money by false pretenses is larceny." Millard v. Commonwealth, 34 Va. App. 202, 205, 539 S.E.2d 84, 85 (2000); see Code § 18.2-178.

> To sustain a conviction of larceny by false pretenses, the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property.

Wynne v. Commonwealth, 18 Va. App. 459, 460, 445 S.E.2d 160, 161 (1994).

Larceny by false pretenses, unlike larceny by trick,[1] requires that title or ownership pass to the perpetrator.  See Bray v. Commonwealth, 9 Va. App. 417, 424, 388 S.E.2d 837, 840 (1990) ("An essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant." (quoting Cunningham v. Commonwealth, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978)); Davies v. Commonwealth, 15 Va. App. 350, 352, 423 S.E.2d 839, 840 (1992) ("The requirement that the defendant obtain ownership of the property, rather than mere possession, distinguishes the offense of larceny by false pretenses from the offense of larceny [by trick].").  This additional distinguishing element is properly described as either title or ownership; these are not separate elements, only different terms.[2]  As Reid's convictions were for larceny by false pretenses, we must determine whether title, or more germane to this discussion, ownership, effectively passed to Reid.

Determining when title or ownership passes, as opposed to mere possession, is less straightforward with currency than with other tangible property.[3]  Virginia's appellate courts have not addressed the precise issue before us.  "When the property obtained is money,

---

[1] Larceny by trick is not a separate and distinct statutory offense (unlike larceny by false pretenses), but rather is a common law species of larceny where the element of trick substitutes for the wrongful taking element required by larceny.  See 7 Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 420 (2015-2016 ed.) (noting that "larceny by trick . . . was assimilated into larceny on the theory that consent obtained by fraud was not true consent and hence that the taker had trespassed upon the chattel without consent of the possessor").

[2] We recognize that the terms are not always synonymous.  See Lewis v. Commonwealth, 28 Va. App. 164, 169, 503 S.E.2d 222, 224 (1998) (affirming a false pretenses conviction even though the seller retained title to a truck as security under a conditional sales contract).  However, as used here, "title" means "the legal link between a person who owns property and the property itself," not the other common use connoting "[l]egal evidence of a person's ownership rights in property."  Title, Black's Law Dictionary (10th ed. 2014).

[3] "In most cases one who hands over money to another never expects to get that very money back; and so it might be thought in most cases of money obtained by fraud the wrongdoer obtains title, making his crime false pretenses rather than larceny by trick."  Wayne R. LaFave, 3 Substantive Criminal Law § 19.7(d)(2) (2d ed. 2003).

[Virginia] cases generally do not distinguish between ownership and possession.  Such cases tend to turn on whether the misrepresentation was one of existing fact which makes out false pretenses or some other fraud which makes out larceny by trick."  7 Ronald J. Bacigal, <u>Virginia Practice: Criminal Offenses and Defenses</u> 272-73 (2013-2014 ed.).  However, the fact that the transfer was a loan with a promise of repayment and interest does not preclude, categorically, a larceny by false pretenses conviction.  <u>See</u> <u>Jewel v. Commonwealth</u>, 30 Va. App. 416, 517 S.E.2d 264 (1999), <u>aff'd</u>, 260 Va. 430, 536 S.E.2d 905 (2000).  In <u>Jewel</u>, the defendant produced false contracts to induce the victim to loan him money to rent equipment allegedly needed to perform the contracts.  The defendant was to repay the loan, plus interest.  This Court upheld his conviction for larceny by false pretenses, rejecting the defendant's argument that larceny by false pretenses requires that a defendant intend to permanently deprive the victim of the goods.  This Court explained:

> the gravamen of the offense, . . . is the obtainment of ownership of property, by false representations or pretenses.  But there is no requirement that the intended victim suffer actual pecuniary loss.  Ultimate financial gain or loss to the victim is immaterial.  The crime is complete when the fraud intended is consummated by obtaining the property sought by means of the false representations, and the offense is not purged by ultimate restoration or payment to the victim.  It is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss.

<u>Id.</u> at 427, 517 S.E.2d at 270 (quoting <u>Quidley v. Commonwealth</u>, 221 Va. 963, 966, 275 S.E.2d 622, 624-25 (1981)).

However, it is not clear that all loans with a promise of repayment transfer title or ownership.

> It is generally held that where the victim hands money to the wrongdoer with the understanding that the latter is to spend it only for a particular purpose (*thus creating an agency or trust*, it would seem) title does not pass to the wrongdoer . . . .  Thus where the victim hands money to the wrongdoer to be invested in the stock

- 4 -

market, or to purchase specified property, or to bribe a particular official,[4] and the wrongdoer, instead of thus dealing with the money, absconds with it, the crime is larceny by trick rather than false pretenses, the wrongdoer never having acquired title.

On the other hand, it is possible that the victim should agree or understand that the money, though desired for a particular purpose, might be used for any purpose—i.e., the defendant's lie about his need for money induces the victim *to make a loan rather than to create an agency or trust*—in which case title to the money does pass to the defendant . . . .

Wayne R. LaFave, 3 Substantive Criminal Law § 19.7(d)(2) (2d ed. 2003 & Supp. 2014-2015) (emphasis added) (footnote omitted).  Nothing in Virginia's statutory or case law suggests any reason to deviate from this common-sense approach, an approach which has been applied in other jurisdictions.  The question, then, is if the transfer of currency was so that the defendant would use it on behalf of the victim (larceny by trick) or for his or her own benefit (false pretenses).  In other words, we must determine if the victim intended to create an agent or trustee relationship.  See, e.g., Graham v. United States, 187 F.2d 87, 89-90 (D.C. Cir. 1950) (affirming conviction for larceny by trick where the defendant, an attorney, solicited money from a client in order to bribe a policeman on the client's behalf but did not do so); State v. Scott, 256 S.W. 745, 747 (Mo. 1923) (ruling it was larceny by trick, not false pretenses, because the victim "did not intend to invest the defendant with the title to the money" when the victim gave money to the defendant to buy the victim a suit, but instead the defendant took the money and gave the victim a package containing rags); People v. Miller, 62 N.E. 418, 423 (N.Y. 1902) (holding that defendant committed larceny by trick, not false pretenses, when the victim gave defendant money to invest in the stock market, because the victim "did not intend to part with her title to the money to the defendant"); State v. Barnes, 354 S.E.2d 606, 609 (W. Va. 1987) (upholding a

---

[4] Although it is ambiguous in this quotation, the cited cases all refer to a victim who intends that the defendant take these actions on the victim's behalf.

false pretenses conviction where the victim loaned money to the defendant so he could buy clothes for his family because "[t]he lender intend[ed] to pass both title to and possession of the loan proceeds").

Reid argues that, because the victims loaned money expecting to receive repayment and an additional profit, Reid could not have gained title to the currency as larceny by false pretenses requires. Instead, Reid reasons, the victims only gave Reid temporary possession of their funds. Jewel plainly rejects this argument. The only potentially meaningful distinction is that here, unlike in Jewel, the victims remained with Reid in an effort to ensure he used the funds and repaid them as promised.[5] Reid argues that this evinced their intent to pass possession but not title. We disagree. The victims loaned the money for Reid to use for his own purposes—to recover his vehicle. Even if they did not intend to give him the funds for his unrestricted use (which Jewel makes plain is not required for title to transfer), he was not using the money on their behalf or at their behest. The victims clearly relinquished the funds for Reid to use for his own benefit. Even if the victims believed that the loan was for a specific purpose, that purpose was Reid's, not their own. Therefore, because Reid took both possession and ownership of the victim's funds, he committed larceny by false pretenses.

### B. Sufficiency of the Evidence of Fraud

To support a conviction for larceny by false pretenses, the Commonwealth must prove that the pretenses employed were in fact false. See Wynne, 18 Va. App. at 460, 445 S.E.2d at 161. "The false pretense must be a false representation of an existing fact or past event." Watson v. Commonwealth, 4 Va. App. 450, 452, 358 S.E.2d 735, 736 (1987). In a challenge to

---

[5] This distinction is more relevant to whether the victims transferred possession, which neither party contests. Furthermore, the victims waited in their cars as Reid went into various houses, where he could have spent or otherwise disposed of the loaned money. In addition, they both, ultimately, left Reid without having recovered their money.

the sufficiency of the evidence of falsity, we view the evidence, and all inferences reasonably drawn from it, in the light most favorable to the Commonwealth. Muhammad v. Commonwealth, 269 Va. 451, 536, 619 S.E.2d 16, 65 (2005). "It is our duty to affirm the trial court's judgment unless that judgment is plainly wrong or without evidence to support it." Id. We must also "ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Ervin v. Commonwealth, 57 Va. App. 495, 502, 704 S.E.2d 135, 138 (2011) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003)). So viewed, the Commonwealth met its burden.

Here, several facts collectively induced the victims to lend Reid money. First, Reid said his car was towed, and he needed a ride, and then a loan, to get it. Second, he said he could repay the victims from money currently in his towed vehicle. He also told the victims that he would pay them additional money to compensate for their time and trouble (although this was not essential to either victim's motivation in making the initial loan). Reid argues that, because the Commonwealth did not affirmatively prove that Reid in fact did *not* have a towed car containing the means to repay the victims, it failed to prove that Reid's inducements were false. Under Reid's view, to satisfy the falsity element, the Commonwealth needed to prove a negative, identifying every vehicle to which Reid had access, and determine that none, on the dates in question, were with any nearby towing company (or contained the promised cash). In light of the evidence, we do not agree that such proof is necessary to meet the Commonwealth's burden.

Here, Reid used identical stories to convince each victim to drive him around and lend him money. He then led the victims on bizarre capers around the city, convincing them to give him money along the way. Although Reid said his car had been towed, and even told one victim exactly where his car allegedly had been towed, he never directed either victim to go to any towing company. Both victims gave hundreds of dollars to Reid, yet he still claimed to need

additional funds to recover the vehicle.  Neither victim received the promised repayment.

Viewing these facts in the light most favorable to the Commonwealth, and drawing natural

inferences therefrom, a rational trier of fact certainly could have found the evidence sufficient to

show Reid employed false pretenses.

### III. CONCLUSION

For the foregoing reasons, we find no error and affirm Reid's convictions.

<u>Affirmed.</u>