UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Malveaux
Argued at Richmond, Virginia

MAURELL E. BROWN

v.      Record No. 1543-17-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RANDOLPH A. BEALES
DECEMBER 18, 2018

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Dennis M. Martin, Sr., Judge

Richard G. White, Assistant Public Defender, for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

On June 8, 2017, Maurell E. Brown ("Brown" or "appellant") was convicted in a bench

trial of obtaining money by false pretense in violation of Code § 18.2-178.  On appeal, he

contends that the evidence was insufficient to support his conviction "where the money given to

Brown was given to him for a specific purpose, Brown did not have the requisite criminal intent,

and title did not transfer at the time of the alleged taking."

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth,

as we must since it was the prevailing party" in the trial court.  Beasley v. Commonwealth, 60

Va. App. 381, 391 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330 (2004)).  So

viewed, the evidence at appellant's trial established that in December 2016, Tyquantae Mason

("Mason") spoke with appellant about purchasing a vehicle.  Mason was acquainted with

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appellant from their membership in a motorcycle club, and he knew that appellant had worked at Royal Chevrolet, a car dealership. During their conversation, Mason asked appellant if he was still employed at Royal Chevrolet, and appellant told Mason that he was working "somewhere else." Mason asked appellant if he would send him "a picture of some trucks that were on his lot because [he] was interested in purchasing a truck." A few hours later, appellant sent Mason three or four pictures of trucks.

Shortly thereafter, Mason reached out to appellant about purchasing a red Nissan Titan truck that was featured in one of the pictures. They came to an agreement that Mason could drive the truck off of the lot once he had made a $1,000 deposit. On or around December 10, 2016, Mason and his mother met appellant at a house in the City of Petersburg and gave appellant an envelope containing $500 in cash. The money was "going to be towards the down payment of the truck which [appellant and Mason] had agreed on was supposed to be a thousand dollars."[1] Appellant told Mason that he would email Mason a receipt later that same day, but appellant never sent one.

On the day that Mason was supposed to pay the rest of the deposit and receive the vehicle, appellant picked up Mason while Mason's girlfriend followed them in her own vehicle in which she carried the remaining $500. Mason believed that they would be going to a dealership called "Louie's" because that name was on the license plate of a vehicle in one of the pictures appellant had sent to him. Mason had looked up the address for Louie's prior to leaving with appellant and noticed on the way that they were not headed in the direction of that address. Instead, appellant took Mason in a different direction to another dealership named "Excel Auto Sales" in Carson, Virginia. When they arrived, Mason told appellant, "This don't look like

---

[1] In his testimony at trial, Mason clarified that the $1,000 was the deposit price (or down payment) for the truck – not the full purchase price.

Louie's." Appellant did not provide an explanation for taking Mason to a different dealership. Although appellant did not work at Excel Auto, he proceeded to lead Mason to believe that he was a salesman at that dealership as well.[2]

At Excel Auto, appellant showed Mason a different truck than the red Nissan Titan Mason had asked to buy. Mason told appellant that he was not interested in that truck. Appellant then showed Mason a Ford F-350, which Mason decided that he wanted to purchase. Appellant then told Mason that he needed to call the owner of the dealership. Appellant appeared to call the owner and reported to Mason that Mason first needed to have insurance on the truck before he could drive it off the lot. While Mason was on the phone attempting to secure insurance for the vehicle, appellant told Mason that "he was going to run to the gas station real quick and come back." Appellant left and did not return. Mason never received a contract for a vehicle or a vehicle from appellant, nor did appellant return Mason's $500.

That evening, and in the days following, Mason sent messages to appellant on Facebook. When appellant did not respond, Mason "blocked" appellant from sending him messages. Approximately six months later, about two weeks prior to appellant's trial on this charge, appellant paid Mason $500.

At trial, appellant testified in his own defense. He stated that, at the time that he started having conversations with Mason about the truck, appellant was indeed working at Louie's in Chester. He testified that, according to his arrangement with Mason, Mason needed to pay a total deposit of $1,000 before he could leave Louie's with the red Nissan Titan. According to appellant's testimony, appellant planned to help Mason with the purchase of the red Nissan Titan from Louie's. However, appellant testified that Mason's mother told Mason that appellant

---

[2] At trial, Mason testified that he knew appellant worked at Louie's. He also testified that, as soon as they got to Excel Auto, appellant "represented himself as a salesperson" at Excel Auto.

needed to find him a different vehicle.[3] Appellant claimed that he told Mason he was not able to get him a better vehicle from Louie's with just $1,000 down. Therefore, instead of taking Mason to Louie's, appellant took him to Excel Auto to allow Mason to pick out another vehicle. Appellant testified that he had told Mason about Excel Auto and that he had obtained a vehicle there himself, despite appellant's poor credit. Appellant also testified that he had tried to work out a similar deal for a vehicle from Excel Auto for appellant's then-girlfriend, Aiesha Person.

Appellant testified that he had been unable to give the $500 back to Mason immediately after the deal fell through because his kids had accidentally burned it in their fireplace. He stated that he tried to reach out to Mason via Facebook several times, but he was never able to reach him. Appellant also testified that there was never "any doubt in [his] mind that the money was [Mason's]."

Aiesha Person was present at trial as a witness for appellant. She testified that, in late 2016, appellant was going to "like broker [a] deal" for her for a car at Excel Auto. She testified that she gave him $500 as a deposit for a vehicle at Excel Auto, but he returned it when the transaction did not work out. She stated that appellant never represented to her that he was an employee of Excel Auto and that she knew that he was not an employee of Excel Auto at that time.

At the conclusion of the trial, the trial court asked counsel for the Commonwealth, "[I]s this larceny by trick, or is it larceny by false pretenses?" Counsel for the Commonwealth responded that it was "false pretenses." After hearing argument on that issue and the arguments on the sufficiency of the evidence, the trial court found appellant guilty of obtaining money by false pretense under Code § 18.2-178.

---

[3] Mason's mother, who testified as a witness as part of the Commonwealth's case-in-chief, made no mention of this alleged conversation during her testimony.

II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

A. Whether Obtaining Money by False Pretense or Larceny by Trick

Code § 18.2-178 states, in pertinent part, "If any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny . . . ." Consequently,

> [t]o sustain a conviction of larceny by false pretenses, the Commonwealth must prove: (a) that the accused intended to defraud; (b) that a fraud actually occurred; (c) that the accused used false pretenses to perpetrate the fraud; and (d) that the false pretenses induced the owner to part with his property.

Reid v. Commonwealth, 65 Va. App. 745, 748-49 (2016) (quoting Wynne v. Commonwealth, 18 Va. App. 459, 460 (1994)).

Appellant's sole assignment of error is divided into three arguments. In his first and third arguments (that Mason gave appellant the money for a specific purpose and title did not transfer), appellant contends that, if he committed a crime at all, that crime was larceny by trick –

not false pretenses. "Larceny by false pretenses, unlike larceny by trick, requires that title or ownership[4] pass to the perpetrator." Id. at 749 (footnote omitted). See also Bray v. Commonwealth, 9 Va. App. 417, 424 (1990) ("An essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant (or his nominee)." (quoting Cunningham v. Commonwealth, 219 Va. 399, 402 (1978))).

Generally, when the property at issue is currency, the crime committed is false pretenses because with currency, "[Virginia] cases generally do not distinguish between ownership and possession." Reid, 65 Va. App. at 750 (quoting 7 Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 272-73 (2013-2014 ed.)). See also id. at 750 n.3 ("In most cases one who hands over money to another never expects to get that very money back; and so it might be thought in most cases of money obtained by fraud the wrongdoer obtains title, making his crime false pretenses rather than larceny by trick." (quoting Wayne R. LaFave, 3 Substantive Criminal Law § 19.7(d)(2) (2d ed. 2003)).

Although generally both title and possession pass when the property at issue is currency, in Reid v. Commonwealth, this Court stated, "[W]here the victim hands money to the wrongdoer with the understanding that the latter is to spend it only for a particular purpose (*thus creating an agency or trust*, it would seem) title does not pass to the wrongdoer." Id. at 751. Where this agency relationship exists, only possession passes to the wrongdoer, and the crime involved is larceny by trick, not obtaining money by false pretense. Therefore, as stated in Reid, to determine whether the crime was obtaining money by false pretense or larceny by trick, the dispositive question "is if the transfer of currency was so that the defendant would use it on behalf of the victim (larceny by trick) or for his or her own benefit (false pretenses). In other

---

[4] "Title" and "ownership" "are not separate elements, only different terms." Reid, 65 Va. App. at 749 (footnote omitted).

words, we must determine if the victim intended to create an agent or trustee relationship." Id. at 751-52.

Appellant argues that this Court must find that there was an agency relationship between appellant and Mason because "this case involves money entrusted to [appellant] for the purpose of assisting Mr. Mason to make a purchase." As appellant describes the situation, appellant was assisting Mason in the purchase of a vehicle in a manner similar to the way he allegedly assisted Person. We disagree with appellant's characterization of the facts. Viewing the facts in the light most favorable to the Commonwealth, as we must because it was the party that prevailed below, appellant was an agent of Louie's – not an agent of Mason – when Mason gave appellant the $500.

The evidence establishes that Mason gave the $500 to appellant because appellant was a salesman at Louie's with the authority to accept the money as a deposit for the red Nissan Titan truck that appellant represented was available for sale on Louie's lot. Mason did not give appellant the money because Mason was entrusting appellant with the task of buying a truck on Mason's behalf. Mason's testimony at trial makes it very clear that it was appellant's agency relationship with Louie's that caused Mason to give appellant the $500 in currency. At trial, appellant's counsel questioned Mason about appellant possibly helping Mason to find a vehicle at Excel Auto despite the fact that appellant did not work there. In response, Mason testified, "No. Because, from my understanding, how would somebody be able to sell a vehicle at a place that they do not work?" Mason believed – and appellant testified – that appellant was a salesman at Louie's, presumably with the authority to sell Mason the red Nissan Titan. As such, *appellant was an agent of Louie's – not an agent of Mason*.

In short, as appellant was employed as a salesman for Louie's, appellant could not be Mason's agent in buying a truck from Louie's. Because no agency relationship existed between

Mason and appellant, Mason conveyed both title and possession of the $500 in currency to appellant.[5]

## B. Intent to Defraud

Appellant also contends that the evidence was insufficient to convict him of false pretenses because appellant "did not have the requisite criminal intent." In order to uphold appellant's conviction, "[t]here must be proof that the accused's intent was to defraud and "'the fraudulent intent must have existed at the time the false pretenses were made, by which the property was obtained.'"" Austin v. Commonwealth, 60 Va. App. 60, 66 (2012) (quoting Orr v. Commonwealth, 229 Va. 298, 301 (1985)).

"Intent is the purpose formed in a person's mind that may, and often must, be inferred from the particular facts and circumstances of a case." Guill v. Commonwealth, 255 Va. 134, 139 (1998). "In order to determine "'whether the intent to defraud existed at the time the act was committed, the conduct and representations of the accused must be examined, since intent is a

---

[5] Appellant argues that this case is similar to State v. Scott, 256 S.W. 745, 747 (Mo. 1923). Although this Missouri case is certainly not binding precedent on this Court, the Scott opinion was cited in Reid as an example of an agency relationship where possession – but not title – of money passed from the victim to the defendant. In Scott, Scott approached the victim and told him that he was a porter at a clothing store and he could get the victim a deal on a suit for half price. Id. They went to the store, and the victim gave Scott $35 "with the understanding that he was to carry it to the clerk in the store" in exchange for a suit. Id. Scott returned with a package that the victim later discovered contained only rags. Id. After being convicted of grand larceny, Scott appealed, arguing that the facts showed that the crime committed was obtaining money by false pretense because both title and possession passed when the victim gave Scott the $35. Id. The Missouri appellate court disagreed and held that the crime was not obtaining property by false pretense because the victim had not parted with title to the currency. We find the present case distinguishable from Scott. In Scott, unlike here, it was not a salesman that approached the victim about getting the victim a deal on a suit. Thus, in Scott, the victim had given possession of the money to Scott "for the purpose of taking it to the salesmen in the store." Id. Here, appellant was not operating in the "middle-man" role as Scott did. Mason did not give the money to appellant "for the purpose of taking it to the salesmen" at Louie's because appellant *was* the salesman at Louie's. When Mason gave appellant the money as a salesman for Louie's, Mason was conveying ownership of the money directly to the seller (Louie's). Because no agent relationship existed between Mason and appellant, Mason conveyed both title and possession of the currency to appellant, as a salesman for Louie's.

secret operation of the mind.""" Austin, 60 Va. App. at 66 (quoting Orr, 229 Va. at 301). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." Id. (quoting Fleming v. Commonwealth, 13 Va. App. 349, 353 (1991)). "The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." Simon v. Commonwealth, 58 Va. App. 194, 206 (2011).

A rational factfinder could have found that appellant intended to defraud Mason as early as when appellant sent Mason the picture of the truck on the lot at Louie's. By sending the picture of the truck to Mason, appellant represented to Mason that that specific truck was available for purchase by Mason for a $1,000 deposit (or down payment) and that appellant would allow Mason to drive the vehicle off of the lot if Mason made that deposit. This representation induced Mason to give appellant the $500 towards the down payment. The facts and circumstances that followed support the conclusion that appellant intended to take Mason's money but never sell him the truck. After showing Mason the photograph and taking Mason's money for a specific truck (the red Nissan Titan truck), appellant took Mason to a completely different dealership without explanation. Mason stated that appellant then represented to Mason that appellant was employed at the new dealership, pretended to help Mason purchase a different truck, and then abandoned Mason at the dealership. After leaving Mason alone at the dealership, appellant failed to reach out to Mason, failed to return the $500, and failed to respond to Mason's inquiries. See Austin, 60 Va. App. at 67 ("Factors this Court has found as probative of fraudulent intent in other criminal offenses where the intent to defraud is an element include evasive conduct, McCary v. Commonwealth, 42 Va. App. 119, 128-29 (2003), and a general lack of communication with the victims about any problems or other reasons asserted for non-payment or non-performance, see id.; Rader v. Commonwealth, 15 Va. App. 325, 330

(1992).").  In his defense, appellant testified that his children had accidentally burned the $500 in the fireplace, preventing him from immediately returning it to Mason.  The trial judge, as finder of fact, found appellant's story incredible.  For these reasons, the evidence was sufficient for a rational factfinder to conclude that appellant possessed the intent to defraud Mason.[6]

### III.  CONCLUSION

In short, appellant was not acting as an agent for Mason when Mason gave appellant the $500.  Mason gave appellant the money because appellant was a salesman for Louie's, and Mason wanted to buy a truck from Louie's.  Therefore, when Mason gave appellant the money, he conveyed both title and possession of the money to appellant, as is required for a conviction of obtaining money by false pretense.

In addition, the evidence presented at trial certainly could have allowed a rational factfinder to conclude that appellant intended to defraud Mason at the outset of the transaction.  After agreeing to sell Mason a truck at Louie's, the dealership where he then worked, and after accepting $500 for that vehicle, appellant – without prior notice to Mason – took Mason to a completely different dealership located a considerable distance from Louie's.  There, he represented to Mason that he was an employee of that dealership and tried to sell Mason a completely different truck.  As Mason then attempted to secure insurance on the vehicle, appellant drove away and left Mason at the dealership.  He then avoided further contact with

---

[6] In his brief, appellant's criminal intent argument largely morphs into the argument that appellant never made a false representation to Mason prior to the time that Mason gave appellant the $500.  The Commonwealth contends that this Court should not consider this argument because it was not contained in appellant's assignment of error.  At oral argument before this Court, appellant's counsel argued that whether appellant made a false representation is part of the assignment of error that addresses appellant's criminal intent.  Assuming without deciding that the assignment of error includes the argument that appellant never made a false representation to Mason prior to the time that Mason gave appellant the $500, appellant's argument fails on its merits.  From the evidence presented, a rational factfinder could have concluded that appellant's representation to Mason that the red Nissan Titan truck was for sale by Louie's with a deposit of only $1,000 was a false representation.

Mason until just prior to his trial. Given the totality of these circumstances, we cannot find that *no* rational factfinder would have found the evidence sufficient to support appellant's conviction for obtaining money by false pretense. Therefore, for all of these reasons, we affirm appellant's conviction.

<u>Affirmed.</u>